### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No.:

**CANYON SPRINGS AT SOARING EAGLES TOWNHOME OWNERS ASSOCIATION, INC.**, a Colorado corporation,

    Plaintiffs,

v.

**HOLYOKE MUTUAL INSURANCE COMPANY IN SALEM**, a Massachusetts corporation,

    Defendant.

---

### COMPLAINT AND JURY DEMAND

---

COMES NOW Plaintiff Canyon Springs at Soaring Eagles Townhome Owners Association, Inc. ("Plaintiff"), by and through its attorneys, Furtado Law PC, for its Complaint against the above-named Defendant Holyoke Mutual Insurance Company in Salem, and states as follows:

### I. NATURE OF THE ACTION

1. Plaintiff brings this action seeking economic and non-economic damages related to Defendant's breach of an insurance contract and statutory claims pursuant to C.R.S. §§10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of covered insurance benefits including recoverable depreciation.

## II. PARTIES

2. Canyon Springs at Soaring Eagles Townhome Owners Association, Inc. ("Plaintiff") is a Colorado corporation with its principal place of business at 4325 North Nevada Avenue, #100, Colorado Springs, CO 80907.

3. Holyoke Mutual Insurance Company in Salem ("Defendant") is a Massachusetts corporation with its principal place of business located in Massachusetts. At the time of the loss, Defendant was authorized to do business in Colorado.

## III. JURISDICTION AND VENUE

4. Jurisdiction is asserted pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1391. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Venue is proper because Defendant's insurance policy was purchased in Colorado and was intended to provide coverage for a property located in Colorado.

## IV. GENERAL ALLEGATIONS

5. Plaintiff sought and obtained an insurance policy, Policy No. WA0200124042-00 (hereinafter "the Policy"), from Defendant for 31 residential townhomes located at Wild Peregrine View, Colorado Springs, CO 80916, Harpy Grove, Colorado Springs, CO 80916, Pearl Kite View, Colorado Springs, CO 80916, Shikra View, Colorado Springs, CO 80916 and Great Owl Point, Colorado Springs, CO 80916 (hereinafter "the Property").

6. On or about July 28, 2016, a hail and windstorm hit Plaintiff's Property causing property damage.

7. On or about July 29, 2016, Plaintiff filed its hail claim with Defendant and Defendant issued Plaintiff claim number 20A23932. Defendant also assigned Paul Panagrosso as its adjuster on the claim.

8. On or about August 9, 2016, Defendant hired Vericlaim, Inc. as its independent adjuster on the claim and Vericlaim, Inc. inspected the property. Upon information and belief, during this inspection, Vericlaim, Inc. found hail damage to the roof surfaces, windows, siding and doors at Plaintiff's Property.

9. Upon information and belief, on or about September 24, 2016, Michael Blaseg with Vericlaim, Inc. sent his first estimate to Defendant with a replacement cost value for covered damages in the amount of $940,191.76.

10. On or about September 27, 2016, Defendant sent Plaintiff a letter outlining Vericlaim's estimate of repairs and providing a net payment on Plaintiff's claim after the deductible and recoverable depreciation were removed in the amount of $10,275.30. Upon information and belief, the same day, Defendant sent this payment to Plaintiff.

11. Upon information and belief, soon after, Defendant hired Blu Sky Construction, LLC to provide a bid for repairs.

12. On or about November 11, 2016, Charlie Pappas with Blu Sky Construction, LLC ("Blu Sky") drafted an estimate for Plaintiff's property damage with a replacement cost value of $1,031,295.13.

13. On or about November 11, 2016, Mr. Blaseg drafted his second estimate for repairs for missed covered damages with a replacement cost value of $1,023,004.13.

14. On or about November 15, 2016, Mr. Pappas sent his estimate to Plaintiff for consideration.

15. On or about November 21, 2016, Mr. Panagrosso sent a letter to Plaintiff explaining that the covered loss was now $1,023,004.13 based upon Blu Sky's bid but that after Plaintiff's deductible and recoverable depreciation were removed, Plaintiff current payment on the claim was $43,108.78 (deductible was $789,297.12, recoverable depreciation was $180,598.23).

16. Upon information and belief, Defendant's claims decision and payment based upon a non-retained and preferred contractor of Defendant is an unfair claim practice in Colorado as Plaintiff did not hire Blu Sky to perform repairs. As such, all claims decision on this basis violate C.R.S. 10-4-120 because this alignment with a preferred contractor indirectly forces the insured to retain Defendant's contractor to get repairs done at Defendant's pricing.

17. Upon information and belief, Defendant's selection of only one bid for the job also shows that Defendant failed to acquire competitive bids and only hired Blu Sky to limit its losses on the claim.

18. Mr. Panagrosso then stated that Plaintiff could only recover replacement cost coverage if it signed a separate statement of loss and also provided to Defendant all contracts, invoice, cancelled checks and other documentation necessary to verify completed repairs. Mr. Panagrosso also stated that Defendant may need to reinspect the property after repairs are completed to verify work completion.

19. On or about January 12, 2017, Plaintiff hired Disaster Consulting Services ("DCS") as its construction consultant on its claim.

20. On or about January 24, 2017, Jeremy Lansdown with DCS drafted an estimate for repairs with a replacement cost value of $1,364,608.75.

21. On or about February 3, 2017, Mr. Lansdown emailed Mr. Panagrosso his estimate for repairs and requested that Mr. Panagrosso properly adjust the claim based upon the additions in his estimate that he observed as covered benefits during his inspection.

22. On or about March 16, 2017, Plaintiff hired Kevin Burpee with Pride Public Adjusters as its public adjuster on the claim.

23. On or about March 16, 2017, Mr. Burpee sent his letter of representation to Defendant.

24. On or about May 2, 2017, Mr. Burpee sent a letter to Mr. Panagrosso disputing Defendant's adjustment of the loss and specifically the following Xactimate line items that Defendant failed to include in its estimates:

    a. General Conditions – For this item, Mr. Burpee explained that a temporary toilet was needed, staging areas for materials were needed, along with other items that should be covered as mentioned in Pride Adjuster's estimate.

    b. Commercial Supervision – for this item, Mr. Burpee explained that a supervisor was needed to manage the needed team of installers, to coordinate construction efforts at the Property, to check materials and for quality control of the project. Furthermore, Mr. Burpee explained that overhead is a different line item that covers indirect costs like telephones, office rentals, utilities, gas for vehicles, etc.

    c. Telehandler and Operator costs – Mr. Burpee explained that this job justifies a separate cost for telehandler and operator costs to protect the public as this is a multi-complex residential property. Mr. Burpee also explained that this fee would cut down on labor hours for placing and removing materials on the roof and it would also increase safety of the workers during repairs.

    d. Dumpsters – Mr. Burpee explained that a separate line item for dumpsters would be necessary for haul off of gutters, downspouts and windows.

    e. General Clean up – Mr. Burpee explained that an extra change should be included for cleaning and sweeping walkways, driveways and the landscape every day since Plaintiff's Property is a residential area.

    f. Overhead and Profit – Mr. Burpee explained that overhead and profit was owed due to the number of trades on this job and coordinating those trades. Mr. Burpee also explained his trade count as follows: (1) roofing, (2) gutters, (3) windows, (4) HVAC. (5) telehandler coordination and (6) fencing.

25. Based upon the above information, Mr. Burpee explained that with Pride Adjusters' supplemental items above DCS's estimate, the total value of the claim was $1,430,301.13 in replacement cost value.

26. On or about June 2017, Plaintiff hired Hall Ryan Construction as its contractor to perform repairs related to the date of loss.

27. On or about July 11, 2017, Mr. Burpee sent a letter to Mr. Panagrosso and requested a copy of Blu Sky's bid.

28. On or about August 8, 2017, Mr. Panagrosso emailed Mr. Burpee that after consultation with an attorney regarding Blu Sky's estimate as a basis for Defendant's coverage decision, Defendant determined its previous coverage decision was reasonable and appropriate.

29. More specifically, Mr. Panagrosso also noted that Blu Sky's estimate included all of the items Mr. Burpee was concerned were missing from Defendant's adjustment of the claim. Upon information and belief, Blu Sky's bid fails to differentiate the above Xactimate line items and Mr. Panagrosso misrepresented Blu Sky's bid as including the above Xactimate line items.

6

30. Mr. Panagrosso also noted that overhead and profit was only included on all non-roofing trades and noted that this practice was consistent with industry standards where the overlap of roofers with other trades is minimal.
31. Upon information and belief, Mr. Panagrosso incorrectly stated the industry standard on payment of overhead and profit and the actual industry standard is to pay overhead and profit for all trades where three or more trades are involved, or the complexity of the job warrants such additional costs.
32. Mr. Panagrosso then noted that Defendant had extended Plaintiff an advanced payment of $8,291.00 for the minimal increase in Blu Sky's estimate over Vericlaim's estimate.
33. On or about September 8, 2017, Hall Ryan Construction drafted and submitted its final invoice to Plaintiff in the amount of $761,911.74 (outstanding balance on this amount of $304,764.70). However, included on this invoice was the estimate amount from Pride Adjuster's supplement in the additional amount of $668,389.39.
34. On or about September 25, 2017, Mr. Burpee sent Mr. Panagrosso Hall Ryan Construction's certificates of completion and requested that Defendant release recoverable depreciation based upon this disclosure.
35. On or about September 26, 2017, Mr. Panagrosso emailed Mr. Burpee that Defendant would not release recoverable depreciation on the project without disclosure of Plaintiff's actual scope and cost of repairs pursuant to the Policy's provisions.

36. On or about September 26, 2017, Mr. Burpee responded by providing Defendant with Hall Ryan Construction's final invoice. Based on this disclosure, Mr. Burpee requested release of recoverable depreciation on the completed part of the claim.

37. On or about September 26, 2017, Mr. Burpee responded to Mr. Panagrosso stating that the work was completed on the roofing pursuant to Defendant's estimate but that supplemental work was still not yet completed based upon Pride Adjuster's supplemental estimate. Upon information and belief, Mr. Panagrosso did not respond to this email and continued to unreasonably assert that Plaintiff's claim was properly adjusted pursuant to Blu Sky's bid.

38. On or about November 28, 2017, Mr. Panagrosso emailed Mr. Burpee and asked whether Plaintiff's cost of replacement was now $1,023,004.13 up from Hall Ryan Construction's invoice amount of $761,911.74.

39. On or about November 28, 2017, Mr. Burpee responded that the roofs were completed. Therefore, Mr. Burpee asked that Defendant release recoverable depreciation on the roofing portion of the claim.

40. On or about January 17, 2018, Mr. Panagrosso drafted a letter to Mr. Burpee summarizing the claims history and noting that due to Hall Ryan Construction's invoice of only $761,911.74 for roofing only, Plaintiff was not entitled to holdback depreciation on Defendant's current replacement cost value of $1,023,004.13. Therefore, Mr. Panagrosso asked for the following documentation:

    a. Documentation showing actual amounts spent (cancelled checks).
    b. Documentation showing what work was completed.
    c. The contract between Plaintiff and Hall Ryan Construction outlining the scope of the repairs and
    d. Scope and cost of open items for work yet to be completed.

41. Upon information and belief, however, Mr. Panagrosso misread Hall Ryan Construction's final invoice because it included Pride Adjuster's supplemental estimate amount an amount owed under the Policy. Upon information and belief, Mr. Panagrosso's misunderstanding of this invoice unreasonably delayed payment of covered benefits on the claim.

42. Upon information and belief, Mr. Panagrosso's request for the above documentation is not justified under the Policy's terms and conditions and all that he needed to release recoverable depreciation was an invoice in the amount of $1,023,004.13. Upon information and belief, all other document requests are redundant in nature and represent just a delay tactic on the claim by Defendant in payment of covered benefits.

43. On or about January 22, 2018, Mr. Panagrosso sent Mr. Burpee his January 17, 2018 letter requesting the above documents to submit to appraisal.

44. On or about January 31, 2018, Mr. Burpee sent Mr. Panagrosso Plaintiff's demand for appraisal based upon the parties' disputed amount of loss to-date of remaining work on the project other than the finished roof work.

45. On or about February 19, 2018, Mr. Panagrosso sent a letter to Mr. Burpee that in light of Hall Ryan Construction's representations that work was not completed at the property, Defendant would not release recoverable depreciation until it got proper documentation that work was completed. Furthermore, Mr. Panagrosso stated that Defendant could not agree that a dispute regarding the amount of loss existed without this documentation for purposes of proceeding to appraisal.

46. Upon information and belief, Mr. Panagrosso's refusal to submit to appraisal is evidence of bad faith as Mr. Burpee previously submitted to Defendant an estimate with a replacement cost value of $1,430,301.13 compared to Defendant's $1,023,004.13 estimate from Blu Sky. The difference between these estimates demonstrates a clear dispute regarding the amount of loss despite the issue of whether recoverable depreciation was owed on Defendant's estimate amount. Upon information and belief, Mr. Panagrosso's statement on this matter is a breach of the appraisal provision under the Policy.

47. On or about March 8, 2018, Defendant contacted Plaintiff informing that Pride Adjusters notified Defendant it was no longer on the claim and asked Plaintiff how it wanted to proceed on the claim.

48. On or about April 6, 2018, Mr. Panagrosso emailed Plaintiff that Defendant had yet to be contacted by Plaintiff's new claims representative.

49. On or about April 30, 2018, Mr. Panagrosso sent Justen Newton with DCS an email asking that DCS provide evidence of its role in the claim.

50. On or about April 30, 2018, Mr. Newton responded that his company was not acting as a public adjuster on the claim by just relaying information. Mr. Newton clarified his role in that he was hired to accurately identify all covered damages for the property and the construction costs to repair those damages.

51. On or about May 1, 2018, Mr. Panagrosso emailed Mr. Newton that he needed documentation of actual costs of repairs on the roof before proceeding to appraisal. Mr. Panagrosso also questioned Mr. Newton's role considering that Hall Ryan Construction agreed to work with Defendant on the scope of the loss.

52. On or about May 7, 2018, Mr. Newton sent an email to Mr. Panagrosso stating that there was a clear disagreement regarding the amount of loss based upon the estimates between the parties. Based upon this disagreement, Mr. Newton questioned Mr. Panagrosso's refusal to submit to appraisal.

53. On or about May 22, 2018, Mr. Panagrosso contacted Plaintiff criticizing Mr. Newton for acting like a public adjuster in violation of Colorado law. Mr. Panagrosso also summarized the claim history including that Defendant's total payments on the claim after the $789,297.23 deductible was $61,675.08.

54. On or about June 13, 2018, Plaintiff's Property was hit by a second hail and windstorm causing additional damage to its Property. Upon information and belief, the parties can appraise both dates of loss in appraisal.

55. Upon information and belief, on or about July 13, 2018, Mr. Panagrosso sent Plaintiff a reservation of rights letter on its new claim explaining that damage other than the roofing from the first storm was not fixed prior to the new date of loss and that Defendant reserved its right to deny coverage to those damages as preexisting damage.

56. Upon information and belief, Mr. Panagrosso's letter unreasonably blames Plaintiff for not fixing the entire property before the new storm damage occurred even though Defendant's adjustment of the prior claim did not pay for the repairs necessary to put the Property in pre-loss condition on the first claim.

57. Although Defendant had the necessary documentation during the claim process to identify the proper scope of repairs and price for Plaintiff's claim, Defendant unreasonably delayed and denied covered benefits by failing to properly pay for

covered benefits and then refusing to appraise the loss in violation of the Policy's appraisal provision.

58. As a consequence of Defendant's conduct in unreasonably delaying and denying Plaintiff's claims for benefits due and owing under the Policy, Plaintiff has incurred and continues to incur damages.

## V.     FIRST CLAIM FOR RELIEF
(*Breach of Contract*)

59. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

60. The Policy creates a contract of insurance.

61. By its actions, as described above, Defendant breached the contract of insurance by failing to consider all relevant information submitted by Plaintiff on the claim and failing to pay covered benefits under the Policy.

62. As a direct and proximate result of said breach, the Plaintiff is entitled to damages in an amount to be determined at trial.

## VI.     SECOND CLAIM FOR RELIEF
*(Violation of C.R.S. §10-3-1115 and Relief Pursuant to §10-3-1116)*

63. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

64. C.R.S. §10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

65. Plaintiff is a first-party claimant under C.R.S. §10-3-1115.

66. Defendant has denied the Plaintiff's claim without a reasonable basis within the meaning of C.R.S. §10-3-1115.

67. C.R.S. §10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed by an insurer may bring an action in Colorado district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

68. Because of Defendant's actions, as described above, violate C.R.S. §10-3-1115, Plaintiff brings this claim to recover its reasonable attorneys' fees and court costs and two times the covered benefit, as allowed under C.R.S. §10-3-1116.

### THIRD CLAIM FOR RELIEF
*(Declaratory Judgment – Breach of the Appraisal Provision)*

69. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

70. Plaintiff's Policy with Defendant contains the following appraisal provision:

    2. Appraisal

    If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
    Each party will:

    a. Pay its chosen appraiser; and

    b. Bear the other expenses of the appraisal and umpire equally. If there is an appraisal, we will still retain our right to deny the claim.

71. As provided above, the parties disagree about the amount of the loss regarding all exterior work at the property other than roofing.

72. In the event of a disagreement regarding the amount of the loss, the Policy allows either party to demand appraisal on the other.

73. As stated above, pursuant to the Policy's appraisal provision, Plaintiff demanded that Defendant submit to the appraisal process for disputed amounts on the claim.

74. As stated above, Defendant denied Plaintiff's demand for appraisal in violation of the appraisal provisions' terms.

75. Plaintiff seeks declaratory judgment that Defendant is in breach of the appraisal provision's terms and that the Court compel Defendant to participate in the appraisal process on the disputed amounts of the claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that this Court enter judgment in its favor and against Defendant on its Claims for Relief as follows:

1. Damages for Defendant's breach of contract including its breach of the appraisal provision;
2. To compel Defendant to submit to the appraisal process under the Policy's terms and conditions;
3. All unpaid covered benefits owed under the Policy;
4. Two times the amount of all covered benefits under the Policy;
5. Costs, expert witness fees, and attorneys' fees per statute incurred in prosecuting its claims;
6. Pre- and post-judgment interest; and
7. For such other and further relief as this Court may deem just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS**

Respectfully submitted this 17th day of July 2018.

FURTADO LAW PC

*/s/ Nathanael Archuleta*
David Furtado, Esq.
Nathanael Archuleta, Esq.
Katherine Goodrich, Esq.
Furtado Law PC
3773 Cherry Creek North Drive,
Ste. 755
Denver, CO 80209
Telephone: (303) 755-2929
Email:      Dfurtado@furtadolaw.com
            Nathanael@furtadolaw.com
            katie@furtadolaw.com
Attorneys for Plaintiff