IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-1811-WJM-KMT

CANYON SPRINGS AT SOARING EAGLES TOWNHOME OWNERS ASSOCIATION, INC., a Colorado corporation,

Plaintiff,

v.

COUNTRY MUTUAL INSURANCE COMPANY,

Defendant.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND TERMINATING CASE**

This is a dispute between a homeowners association and its property and casualty insurer over whether the insurer has properly calculated the amount of loss flowing from a severe hail storm. Plaintiff Canyon Springs at Soaring Eagles Townhome Owners Association, Inc. ("Canyon Springs"), sues Defendant Country Mutual Insurance Company ("Country Mutual") for breach of insurance contract, bad faith breach of insurance contract, and unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-3-1115 and -1116. (ECF No. 1.)[1]

Currently before the Court is Canyon Springs's Motion for Partial Summary Judgment (ECF No. 19) and Country Mutual's Cross Motion for Summary Judgment

---

[1] Plaintiff originally named Holyoke Mutual Insurance Company as the defendant. The magistrate judge later granted the parties' motion to substitute Country Mutual. (ECF No. 15 at 2.)

(ECF No. 20). Canyon Springs argues that the contractual amount-of-loss question must be resolved in its favor as a matter of law, leaving only bad faith and unreasonable delay/denial for trial. Country Mutual argues that the contractual amount-of-loss question must be resolved in its favor as a matter of law, and that bad faith and unreasonable delay/denial necessarily fail as a result.

For the reasons explained below, the Court finds that Country Mutual has the better argument. Moreover, Canyon Springs concedes that its other claims fail if Country Mutual has no coverage obligation. Accordingly, Canyon Springs's motion will be denied, Country Mutual's motion will be granted, and this case will be terminated.

## I. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right

to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  FACTS

The relevant facts are straightforward and generally undisputed.

As of June 2016, Country Mutual insured thirty-one townhome buildings managed by Canyon Springs.  (ECF No. 19 at 2–3, ¶¶ 1–2.)  On June 28, 2016, a hailstorm damaged those buildings.  (*Id.* at 3, ¶ 2.)  Country Mutual estimated that the total replacement cost for all hail-damaged property would be $1,031,295.13 ("Comprehensive Estimate").  (*Id.* ¶ 3.)  Of that estimate, the largest line item was the expected cost of roof repairs, estimated at $758,634.45 ("Roof Estimate").  (*Id.* ¶ 7.)

Canyon Springs paid to repair the roofs only, not the other items within the Comprehensive Estimate.  (*Id.* ¶ 8; *see also id.* at 8 ("Canyon [Springs] did not actually repair the damaged gutters or damaged siding").)  The actual cost of roof repairs turned out to be $761,911.74—less than the applicable deductible under the circumstances, which was $789,291.12.  (*Id.* at 3, ¶¶ 4, 8.)  Canyon Springs nonetheless claimed that Country Mutual owed a "holdback depreciation" payment (discussed below), which Country Mutual denied.  (*Id.* ¶ 9.)  Canyon Springs claims the holdback depreciation payment amounts to $128,907.25.  (*Id.* ¶ 6.)  The parties' dispute centers on whether the insurance policy requires Country Mutual to make that payment, and, if so, whether Country Mutual's failure to make the payment amounts to bad faith or unreasonable delay/denial of insurance benefits.  (ECF No. 20 at 4, ¶ 11.)

## III.  ANALYSIS

### A.  Breach of the Insurance Policy

The parties' dispute requires the Court to construe the following language from the insurance policy's Replacement Cost Endorsement, which limits "replacement cost"

3

payments to

> the cost to repair or replace [the relevant property], after application of the deductible(s) and without deduction for depreciation, but no more than the least of the following amounts:
>
> (i) The Limit of Insurance . . . that applies to the lost or damaged property;
>
> (ii) The cost to replace, on the same premises, the lost or damaged property with other property:
>
>   i. Of comparable material and quality; and
>
>   ii. Used for the same purpose; or
>
> (iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

(ECF No. 19-1 at 97.)

The parties spend much of their briefs arguing over the meaning of clause (iii). Country Mutual argues that clause (iii), if not other language in the policy, excuses payment to Canyon Springs because the amount actually spent was less than the applicable deductible. (ECF No. 21 at 7.) Canyon Springs counters that clause (iii) is simply a backstop to prevent overcompensating the insured, or, at a minimum, it creates an ambiguity that must be construed against the insurer. (ECF No. 19 at 7–11; ECF No. 22 at 4; ECF No. 23 at 5.)

In the Court's view, Country Mutual's argument is closest to correct, but not because of clause (iii). That clause is a distraction in the present circumstances. The operative language comes at the beginning of the block-quoted language, above, limiting "replacement cost" to "the cost to repair or replace [the relevant property], after application of the deductible(s) and without deduction for depreciation." (ECF No. 19-1 at 97.) Thus, the first step is to take the "cost to repair or replace" without deduction for

4

depreciation and subtract the deductible.  That number must then be compared to the amounts specified in clauses (i), (ii), and (iii), to ensure it is "no more than the least of" those amounts, but such comparison is obviously a moot exercise if the number is negative.  By definition, losses that do not exceed the applicable deductible are noncompensable.

Here, one might argue that "cost to repair or replace" is ambiguous as between estimated cost and actual cost.  That ambiguity (if there is one) is irrelevant here because both the Roof Estimate ($758,634.45) and the actual repair cost ($761,911.74) are less than the applicable deductible ($789,291.12).  In other words, subtracting the deductible from either the Roof Estimate or the actual repair cost yields a negative number, rendering moot both the "no more than the least of" inquiry and the precise meaning of clause (iii).  Because the repair cost is not exceed the deductible, Country Mutual owes nothing.

How, then, does Canyon Springs come to the conclusion that it is owed $128,907.25 in holdback depreciation?  The full details of Canyon Springs's calculation are unnecessary to relate.  The salient point is that Canyon Springs starts with the Comprehensive Estimate ($1,031,295.13)—describing it as "undisputedly" the "total amount of loss"—and then subtracts the deductible ($789,291.12) from that, leading to a positive number.  (ECF No. 19 at 7.)[2]  Canyon Springs treats this calculation as some sort of theoretical starting to point to Country Mutual's potential liability, to be followed by additional calculations.  (*Id.*)

---

[2] The difference is $241,998.01, from which Canyon Springs subtracts "actual cash value" payments that Country Mutual already made (apparently under the assumption that Canyon Springs would repair everything), eventually arriving at $128,907.25, which Canyon Springs declares to be the holdback depreciation.  (*Id.* at 1–2, 7–9.)

5

But the relevant language from the Replacement Cost Endorsement does not create a theoretical starting point.  It creates a limitation on replacement cost payments.  Moreover, the Comprehensive Estimate is not the total amount of loss, much less "undisputedly" total amount of loss, and it is unclear how Canyon Springs came to equate the two.  It is further unclear how Canyon Springs came to conclude that, assuming an estimate equals a "total amount of loss," the relevant estimate was the Comprehensive Estimate as opposed to the Roof Estimate.

Canyon Springs appears to be relying on an example provided in the insurance policy's Wind or Hail Deductible Endorsement (separate from the Replacement Cost Endorsement) which begins by declaring, for purposes of the example, that "[t]he amounts of loss to the damaged property are $60,000 (building #1) and $40,000 (building #2)."  (ECF No. 19-1 at 96.)  The example then steps through the process of calculating the deductible for each building (a percentage of the policy limits for each building), summing the deductibles ($2,880), determining whether that deductible applies or whether a flat "All Peril Deductible" instead applies (the original deductible applies), and then concluding that "[t]he most we will pay is $97,120," which is the $100,000 total loss (as between the two buildings), minus the $2,880 combined deductible.  (*Id.*; *see also* ECF No. 19 at 6–7 (reproducing and then relying on this example).)

Canyon Springs seemingly infers that when the example says "[t]he amounts of loss to the damaged property are $60,000 (building #1) and $40,000 (building #2)," it means the total *estimated* amounts of loss.  Nothing in the example says as much.  Even if Canyon Springs's view is accurate, Canyon Springs does not explain why the

6

relevant estimate in this case is the Comprehensive Estimate, as opposed to the Roof Estimate. Moreover, Canyon Springs ignores the statement earlier in the Wind or Hail Deductible Endorsement that Country Mutual "will not pay for loss or damage until the amount of loss or damage exceeds the Deductibles." (ECF No. 19-1 at 95.)[3]

For these reasons, Country Mutual is entitled to summary judgment on Canyon Springs's claim that Country Mutual breach the insurance policy.

## B. Bad Faith and Unreasonable Delay/Denial

Canyon Springs concedes, under the circumstances of this case, that its claims for common-law bad faith and statutory unreasonable delay/denial fail if it is not entitled to further payments under the policy. (ECF No. 23 at 7, 9.) The Court has ruled that it is not entitled to further payments under the policy. Accordingly, Country Mutual is entitled to summary judgment on Canyon Springs's bad faith and unreasonable delay/denial claims.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Motion for Partial Summary Judgment (ECF No. 19) is DENIED;

2. Defendant's Cross Motion for Summary Judgment (ECF No. 20) is GRANTED;

3. The Final Trial Preparation Conference scheduled for October 17, 2019, and the five-day jury trial scheduled to begin on November 4, 2019, are both VACATED;

---

[3] Canyon Springs says that the "overarching dispute" between the parties arises because "Country Mutual is conflating the terms 'amount of loss' [in the Wind or Hail Deductible Endorsement] and 'amount actually spent' [in clause (iii) of the Replacement Cost Endorsement]." (ECF No. 22 at 3.) As already discussed, the meaning of clause (iii) is irrelevant in these circumstances.

4. The Clerk shall enter judgment in favor of Defendant and against Plaintiff, and shall terminate this case; and

5. Defendant shall have its costs upon compliance with D.C.COLO.LCivR 54.1.

Dated this 10th day of October, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge